ETHEL M. SWEENEY & a. v. ALFRED WILLETTE & a.

*Frederic K. Upton* and *Robert W. Upton* (*Mr. Robert W. Upton* orally), for the plaintiff.

*Hinkley & Hinkley* and *J. L. Blais* (*Mr. Walter D. Hinkley* orally), for the defendant, Alfred Willette.

The defendant, Dominic Poretta, filed no brief.

BLANDIN, J. The plaintiff's claims of negligence in broad outline are these: first, that the clearance lights on the truck were not lighted, and second, that the truck came onto the plaintiff's side of the road. The defendant denies both of these contentions and says further that there is no evidence upon which to base findings that the clearance lights were unlighted, or that the failure to light them, if any, was causal, or that the accident happened on the plaintiff's side of the road.

In regard to the clearance lights, one witness testified unequivocally that a short time before the accident he saw the truck parked by the Country Club in Gorham with its headlights on but its clearance lights unlighted. In spite of contradictory testimony and his own prior conflicting signed statement, it is axiomatic that the jury could believe this witness' account at the trial if they so chose. See *Kimball v. Dwyer*, 97 N. H. 304, and cases cited. The plaintiff testified positively that as the truck approached her at the scene of the accident, the clearance lights were not lighted. She was in a position to see and she has left no doubt as to what her observations were. Another witness said that almost immediately after the accident, the headlights were lighted but the clearance lights were unlighted. No sufficient reason appears why the jury could not believe this testimony in preference to the contradictory evidence produced by the defendant. The jury could also believe, in view of all the circumstances including the fact that the defendant claimed he got out of the truck at the Country Club in Gorham and observed the lighting, that he was negligent in not noticing then that the clearance lights were out.

It further appears the failure to have them lighted might be found causal. The headlights were not a substitute for the clearance lights. *Cf. Putnam v. Bowman*, 89 N. H. 200, 203. Experience has proved that in addition to headlights, clearance lights are necessary to provide an extra means of alerting an operator and our Legislature has recognized this. R. L., c. 119, s. 9. The jury might reason-

ably believe that the driver allowing enough room to pass what he thought to be an ordinary automobile might have then been unable to avoid the disaster on being suddenly confronted with a "towering, dark mass in back of two headlights," as one witness described this truck. *Cf. Dennis* v. *Railroad,* 94 N. H. 164, 167. Under all the circumstances, it seems reasonable men could believe the failure to have the clearance lights on was causal, and therefore this question is for the jury. See *Thomas* v. *Thurston Motor Lines,* 230 N. C. 122; *McGuiggan* v. *Hiller Bros.,* 209 Wis. 402.

This brings us to the plaintiff's second claim that the accident happened on her side of the road. She testified that as they approached the scene of the accident, "My brother was driving on his own side of the road" about three feet from the [right] shoulder, and that she knew this to be so because "she watched the side of the road and saw where the lights were hitting on the sand and shoulder." She added that just before the collision her brother was driving "on his own side of the road." At the moment of the crash, she "felt the car being dragged." It is claimed that at that instant the truck swung back on its own side of the road, pulling the car toward its left, or easterly side of the road. This testimony findably supports this claim as does the defendant's statement that he pulled to his right to avoid the accident. There was evidence of headlight glass and slabwood on the plaintiff's own west side of the road. The fact that this was not observed until around eight o'clock the next morning, while going to the weight of the evidence, does not make it valueless as a matter of law. Some of the occupants of the defendant's truck said the slabwood fell off *only* on the right or easterly side of the truck and one heard it hitting the blacktop. The defendant admits slabwood was thrown off by the impact. There was evidence that there was "loads of blood" in the center of the road. Also, starting about in the center and four to six feet north of where the headlight glass was scattered, was a "fresh scar" which curved northeasterly. It looked as though it had been made by something "heavy enough to scrape the black surface off and show white pebbles underneath it." This scar or groove, as it was described by one witness, was some six to eight feet long and it stopped about twenty to twenty-five feet southerly of "skid marks." The skid marks were fifteen to twenty-five feet long and ran roughly parallel to the road, curving slightly toward the east and some four to six feet from the east edge. There was also evidence that these marks were made by "the dual wheels of the truck being braked." From

where these "heavy skid marks" stopped, a faint mark extended up to where the dual wheels left the surface and ended on the gravel on the easterly side where it appeared a truck had been parked. There was testimony that the truck "moved to the right" after the accident where, as one witness put it, it "curved off the road." The defendant himself admitted the automobile was on its own right side of the road when he first saw it, as did all the other occupants of the truck who were in a position to see it before the accident. After the crash, the automobile was nearly crosswise of the road with its front end about five feet from the easterly edge and the rear extended approximately six feet into the west lane. The car "itself was about halfway of the road," but as one witness said "There was a mudguard and a part of a running board that was ripped off and that was pulled back. It was in back of the car and that took up practically all of the pavement so that I had to pull out on the soft [west] shoulder going by."

The foregoing, we believe, summarizes the major portions of the record on which the plaintiff relies to make out a case for the jury on the issue of whether the accident happened in the east or west lane of the road. We have gone into the matter in more than usual detail because of the defendant's earnest contention that all of this evidence must be disregarded as a matter of law in the face of the testimony of his witnesses which contradicts so sharply that of the plaintiff's. Assuming that indisputable physical facts (*cf. Lavigne* v. *Nelson*, 91 N. H. 304) make some of the testimony adduced by the plaintiff regarding certain brake and wheel marks and the inferences drawn therefrom highly improbable or even incredible, there yet remains other evidence sufficient to support her claim that the accident happened on her side of the road. For example, we have the headlight glass and slabwood placed on the west side by some witnesses, and the fact that the plaintiff felt the car being dragged, its position after the accident, and the defendant's admission that when he first noticed the car it seemed to be on its own side. The testimony of the occupants of the defendant's truck that slabwood fell off *only on the right or east side of the truck* and that one of them heard it hitting the blacktop cannot be dismissed as utterly incredible as a matter of law, and this testimony together with the evidence of the slabwood on the west side would clearly indicate that the accident happened on the west side of the road. As bearing on the accuracy of the defendant's claims on this point, the jury may also have considered his insistence when his deposition

was taken the automobile was on his side because "with the yellow line I could see he was on my side." Actually there was no yellow line and the defendant now admits it. It would be an extraordinary departure from settled principles to say that because the defendant's other witnesses denied the presence of any slabwood on the west side, the testimony of these occupants should be utterly disregarded as a matter of law. This is especially true when it is considered that the defendant endeavored and did for a long time keep their presence in his truck a secret from everyone including the authorities. It must also be borne in mind that the load was described as a "high, wide and bulging load" and that the absence of banking in the north bound lane might have had a tendency to cause the driver of the truck to swing over into the south bound lane to take advantage of the banking. In all these details the case differs substantially from the situation in *Lavigne* v. *Nelson*, 91 N. H. 304, cited by the defendant as authority for the proposition that he was entitled to a nonsuit and directed verdict, and all the differences are favorable to this plaintiff. It may also be noted that the plaintiff here, placing the automobile on its own side at the crash, was in a far better position to observe its location and did observe it in more detail than did the plaintiffs in the *Lavigne* case. It is axiomatic that each situation must stand on its own facts, and we think on this record here reasonable men could find the contact occurred in the plaintiff's lane. It follows that since there is evidence of the defendant's negligence and the plaintiff's contributory fault is not an issue, the order is

*New trial.*

All concurred.